# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 8:09CR142-LES-FG3 |
| vs. | ) | |
| | ) | ORDER ON MOTION |
| DAVID W. KOFOED, | ) | FOR BILL OF PARTICULARS |
| | ) | |
| Defendant. | ) | |

This matter is before the magistrate judge on the defendant's Motion for Bill of Particulars (Doc. 13) and the Government's response thereto (Doc. 22). Trial is set for August 17, 2009 before Senior Judge Lyle E. Strom.

## I.  BACKGROUND

### A.  Factual Allegations of the Indictment

The indictment alleges that the defendant, David W. Kofoed, was a civilian employee of the Douglas County Sheriff's Office, serving as the Commander of the Crime Scene Investigation Division (CSI). The CSI and Kofoed, in his capacity as Commander, were empowered to collect, record, preserve and present the physical evidence found at crime scenes in court. Because of its expertise, the CSI was frequently called upon to assist other jurisdictions in the State of Nebraska to investigate serious crimes.

In April 2006, pursuant to an agreement between Cass County, Nebraska and the Douglas County Sheriff's Office, the CSI conducted the crime scene investigation in the murder of Wayne Stock and Sharmon Stock. Matthew Livers is the nephew of the decedents. Nicholas Sampson is Livers' cousin.

On April 17, 18 and 19, 2006, CSI employees, under the direction of defendant Kofoed, videotaped the crime scene, took photographs, and collected and processed physical evidence found at the crime scene. Certain blood evidence was collected and taken from the crime scene by a CSI employee to the CSI facility at the Douglas County Sheriff's Office.

On April 19, 2006, a tan Ford Contour owned by Nicholas Sampson's brother, William Sampson, was towed to the Douglas County CSI facility and searched by CSI employees. The vehicle was of interest because a similar vehicle had been seen in the vicinity of the Stock residence in the early morning hours of April 17, 2006. Over 40 items of evidence, including 22 q-tip swabs, were taken from the vehicle. Three of the items were submitted to the University of Nebraska medical Center on April 20, 2006 for DNA testing. On April 20, 2006, the vehicle was secured in the Douglas County Impound Lot, a locked fenced area with restricted access.

During an interview held on April 25, 2006, Livers stated that he and Nicholas Sampson used William Sampson's tan Ford Contour to drive to and from the Stock residence. Livers was arrested and detained on April 25, 2006 in connection with the Stock homicides. Nicholas Sampson, who was arrested and detained the following day, denied any involvement in the Stock homicides. Livers recanted his statements on April 26, 2006, denying any involvement in the Stock homicides.

On April 27, 2006, defendant Kofoed and another CSI employee searched the tan Ford Contour at the Douglas County Impound Lot. Kofoed opened the locked gate with keys obtained from the Douglas County Sheriff's Office. Kofoed searched the front driver's seat area while the CSI employee photographed the rear seat area. Kofoed told the CSI employee that he had obtained a presumptive positive indication for blood on a filter paper taken from

under the driver's side dashboard, below the steering wheel. Kofoed showed the CSI employee the filter paper with a pink color on it consistent with a presumptive positive test for the presence of blood. The CSI employee swiped the same area with a q-tip swab but obtained no presumptive positive reaction on the swab.

CSI policy generally required that the evidence from the Stock homicides be stored in specific locations, i.e., Room 175 or the Bio-Hazard Room at the Douglas County CSI facility. The policy required that evidence placed in or taken from those locations be recorded in a written log maintained at the Douglas County CSI facility.

Kofoed took the filter paper and placed it in a blank white envelope in the Biohazard Room at the Douglas County Sheriff's CSI offices. He did not initiate the chain of custody or complete the reports required by the procedures and policies of the Douglas County Sheriff's Office on April 27, 2006 regarding his search of the Ford Contour or the collection with the filter paper. Kofoed did not immediately submit the filter paper for DNA testing.

On May 8, 2006, Kofoed prepared a written Forensic Services Report stating that he had examined the driver's side compartment of the Ford Contour on May 8, 2006 and obtained a presumptive positive test for the presence of blood. The report identified the filter paper swab as Item S507-15. Kofoed allegedly dated the white envelope containing the filter paper as having been collected on May 8, 2006 and dated a brown outer envelope containing the white envelope and filter paper as having been collected on May 8, 2006. Kofoed also prepared a Douglas County Sheriff's Office Property Report for Item S507-15, dated May 8, 2006. In fact, Kofoed had not examined the Ford Contour on May 8, 2006 and Item S507-15 was collected by Kofoed on April 27, 2006. Kofoed did not log Item S507-15 into the

Douglas County CSI laboratory and did not place an entry on the Douglas County Evidence Log.

Item S507-15 was sent to the University of Nebraska Medical Center Laboratory on May 9, 2006 and was determined to contain the blood of the victim, Wayne Stock. The report was mailed from the laboratory to Kofoed and to the Cass County Attorney on or about June 29, 2006. Kofoed sent his May 8, 2006 Forensic Services Report, Property Report, and the two envelopes containing Item S507-15 to the Cass County Attorney knowing that the items would be relied upon by the county attorney in prosecuting Livers and Sampson for the Stock homicides.

Matthew Livers and Nicholas Sampson were charged with two counts of first degree murder, based on Livers' statements and the DNA testing results showing the presence of Wayne Stock's blood in the tan Ford Contour. They were held in jail pending trial. Except for the DNA evidence derived from Item S507-15, no physical evidence linked either Livers or Sampson to the Stock homicides.

In June 2006, Gregory Fester and Jessica Reid confessed to the murders of Wayne and Sharmon Stock. Substantial physical evidence was obtained to link them to the crimes. In January 2007, Fester and Reid each pled guilty to two counts of second degree murder. They have been sentenced and are in the custody of the Nebraska Department of Corrections.

On October 6, 2006, all charges pending in Cass County against Nicholas Sampson were dismissed and Sampson was released from custody.

On December 5, 2006, all charges pending in Cass County against Matthew Livers were dismissed and Livers was released from custody.

Not until the criminal cases against Livers and Sampson were dismissed did defendant Kofoed tell the Cass County Sheriff's Office, the Nebraska State Patrol, or the Cass County Attorney that the envelopes containing Item S507-15 and his reports detailing the collection of the blood evidence contained the wrong date of collection. Kofoed did not report to the case agents, investigators, or the Cass County Attorney where Item S507-15 had been stored between its collection on April 27, 2006 and May 8, 2006.

### B.  Pending Charges

On April 22, 2009, Kofoed was indicted on charges of:

Count 1  Willfully subjecting Matthew Livers to deprivation of his rights secured and protected by the Fourth and Fourteenth Amendments to the U.S. Constitution, including the right to not have criminal charges based on fraudulent evidence or false information, and the right to not have false evidence knowingly presented against him by one acting under color of law, in violation of 18 U.S.C. § 242,

Count 2  Willfully subjecting Nicholas Sampson to deprivation of his rights secured and protected by the Fourth and Fourteenth Amendments to the U.S. Constitution, including the right to not have criminal charges based on fraudulent evidence or false information, and the right to not have false evidence knowingly presented against him by one acting under color of law, in violation of 18 U.S.C. § 242,

Count 3  Devising or intending to devise a scheme or artifice to defraud another of the right of honest services, "specifically the honest services of KOFOED to gather, collect, secure and analyze evidence related to the double homicide of Wayne and Sharmon Stock" by causing "a DNA report from the University of Nebraska Medical Center Human DNA Identification Laboratory dated June 29, 2006, which contained the results of DNA analysis on Item S507-15, the filter paper taken by KOFOED on April 27, 2006, to be delivered by the United States Postal Service to KOFOED at the Douglas County Sheriff's Office, CSI Division, 3601 N. 156th Street, Omaha, NE 68116," in violation of 18 U.S.C. §§ 1346 and 1341,

Count 4    On or about May 8, 2006, Kofoed "knowingly altered, falsified and made a false entry into a record or document with the intent to impede, obstruct or influence the investigation of a matter, or in relation to or contemplation of the investigation: to wit, an investigation of violations the [sic] constitutional rights of Matthew Livers and Nicholas Sampson; within the jurisdiction of the Federal Bureau of Investigation, a department or agency of the United States," in violation of 18 § U.S.C. 1519.

## II. LEGAL ANALYSIS

The Federal Rules of Criminal Procedure provide that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged," and, for each count, "must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c). "An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *United States v. Wessels*, 12 F.3d 746, 750 (8th Cir. 1993), *cert. denied*, 513 U.S. 831 (1994)). "An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." *Id*.

The court, however, may direct the government to file a bill of particulars. Fed. R. Crim. P. 7(f). "'A bill of particulars serves to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, [and] to avoid or minimize the danger of surprise at trial.' *United States v. Hernandez*, 299 F.3d 984, 989-990 (8th Cir. 2002), *cert. denied*, 537 U.S. 1134 (2003). It 'is not to be used for

discovery purposes.'  [*United States v. Hill*, 589 F.2d 1344, 1352 (8th Cir. 1979), *cert. denied*, 442 U.S. 919 (1979)]."  *United States v. Shepard*, 462 F.3d 847, 860 (8th Cir.), *cert. denied*, 549 U.S. 1099 (2006) (parallel citations omitted).  Nor may a bill of particulars be used to provide detailed disclosure of the government's evidence.  *United States v. Wessels*, 12 F.3d 746, 750 (8th Cir. 1993), *cert. denied*, 513 U.S. 831 (1994) (citing *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 405 (4th Cir. 1985)).

In this case, the first 10½ pages of the 14-page indictment contain a 44-paragraph introductory section, summarized above, describing in substantial detail the events upon which the criminal charges are based and the government's theory of the case.  The government has also provided the defendant with numerous investigative reports, statements, documents and other materials.  The court finds that the indictment fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow him to plead a conviction or acquittal as a bar to a subsequent prosecution.  The defendant has failed to demonstrate that a bill of particulars is required in this case.  For these reasons,

**IT IS ORDERED** that defendant's Motion for Bill of Particulars (Doc. 13) is denied without hearing.

Pursuant to NECrimR 57.2(a), a party may appeal this order by filing a "Statement of Appeal of Magistrate Judge's Order" no later than **Friday, July 17, 2009.**

**DATED July 10, 2009.**

                           **BY THE COURT:**

                           s/ F.A. Gossett
                           **United States Magistrate Judge**