IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 8:09CR142-LES-FG3 |
| vs. | ) | |
| | ) | REPORT AND |
| DAVID W. KOFOED, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the magistrate judge on the defendant's Motion to Declare 18 U.S.C. §§ 1341 and 1346 unconstitutional (Doc. 15), and the government's response thereto (Doc. 23). I recommend that the motion be denied.

## DISCUSSION

As discussed in the July 10, 2009 Order (Doc. 25) denying the defendant's motion for bill of particulars, the defendant was charged in Count 3 of the Indictment with devising or intending to devise a scheme or artifice to defraud another of the right of honest services, "specifically the honest services of KOFOED to gather, collect, secure and analyze evidence related to the double homicide of Wayne and Sharmon Stock" by causing "a DNA report from the University of Nebraska Medical Center Human DNA Identification Laboratory dated June 29, 2006, which contained the results of DNA analysis on Item S507-15, the filter paper taken by KOFOED on April 27, 2006, to be delivered by the United States Postal Service to KOFOED at the Douglas County Sheriff's Office, CSI Division, 3601 N. 156th Street, Omaha, NE 68116," in violation of 18 U.S.C. §§ 1346 and 1341.

The mail fraud statute, 18 U.S.C. 1341, prohibits the use of the mails to execute "any scheme or artifice to defraud..." The term "scheme or artifice to defraud" includes a scheme

"to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. To convict defendant Kofoed on Count 3, the government must prove (1) the existence of a scheme to defraud, i.e., a scheme to deprive another of the intangible right of honest services, and (2) the use of the mails for purposes of executing the scheme. *See United States v. Jennings*, 487 F.3d 564, 577 (8th Cir. 2007).

Citing, *inter alia*, *McNally v. United States*, 483 U.S. 350 (1987), the defendant alleges in the motion that the two statutes fail "to provide sufficiently explicit standards for those who must apply it, and [are], therefore, unconstitutionally vague[.]" *See* U.S. Const. amend. 5 ("No person shall ... be deprived of life, liberty, or property, without due process of law.") The Eighth Circuit's pre-*McNally* cases had interpreted § 1341 to include honest services fraud. In *McNally*, however, the Court held that the mail fraud statute was limited to the protection of property rights and did not extend to the protection of the intangible right to honest government. *See United States v. Blumeyer*, 114 F.3d 758, 765 (8th Cir.), *cert. denied*, 522 U.S. 938 (1997); *United States v. Redzik*, — F.3d —, 2009 WL 1751873, Nos. 08-2418 & 08-3662 (8th Cir., June 22, 2009). The Eighth Circuit has taken the position that § 1346

- was enacted in 1988 to overrule the Supreme Court's decision in *McNally*, *see, e.g., Blumeyer*, 114 F.3d at 765; *Jennings*, 487 F.3d at 577 n.9;
- does not create a separate substantive offense but merely defines a term contained in § 1341, *Redzik*, 2009 WL 1751873 at *3; and
- has revived the precedential value of all Eighth Circuit cases decided pre-*McNally*. *Jennings*, 487 F.3d at 577 n.9 (citing *Blumeyer*, 114 F.3d at 765).

The issue raised by the defendant is whether § 1341, incorporating the definition found in § 1346, is unconstitutionally vague.

> An overly vague statute "violates the first essential of due process of law," because citizens "must necessarily guess at its meaning and differ as to its application". *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). There is a two-part test to determine whether a statute is void for vagueness. The statute, first, must provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

*United States v. Bamberg*, 478 F.3d 934, 937 (8th Cir. 2007), *cert. denied*, 128 S. Ct. 1650 (2008) (parallel citations omitted).

"A vagueness challenge to a statute which does 'not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.'" *United States v. Orchard*, 332 F.3d 1133, 1138 (8th Cir. 2003) (quoting *United States v. Mazurie*, 419 U.S. 544, 550 (1975)); *United States v. Sheikh*, 367 F.3d 756, 764 (8th Cir. 2004). In *United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003) (en banc), the majority held that 18 U.S.C. § 1346, together with § 1341 or § 1343, gave the person of ordinary intelligence a reasonable opportunity to know that conduct of the type alleged in that case deprived certain insurance companies of the honest services of their employees and was, therefore, prohibited by law. "Plainly, [the defendants], as they used the wires and mails surreptitiously to, in effect, bribe employees of insurance companies to act in the interests of [defendants' law firm's] clients instead of the insurance companies, 'had a reasonable opportunity to know' that they were violating sections 1341, 1343, and 1346." *Rybicki*, 354 F.3d at 132. For the same reasons, the court concluded that 18 U.S.C. § 1346, together with § 1341 or § 1343,

-3-

"provides explicit standards for those who seek to apply the statute, including federal prosecutors and courts, at least in the context of private-sector bribery cases such as this one." *Id.*

Examining the offense charged in Count 3 "in light of the facts of the case at hand," the court finds that §§ 1346 and 1341 provide the defendant with adequate notice of the proscribed conduct and provide explicit standards for those who seek to apply the statute. As I have previously noted in conjunction with the defendant's motion for bill of particulars, the indictment includes 44 paragraphs of factual background information.

The government has demonstrated in its brief that § 1346 provided Mr. Kofoed with a reasonable opportunity to know that failure to follow his official duties in conducting forensic investigations into criminal offenses, as detailed in the orders and directives of the Douglas County Sheriff's Office, would deprive that office, as well as any other agency for which Kofoed was conducting forensic investigations, of his honest services.

Kofoed was the Commander of the Crime Scene Investigation (CSI) Division. As such, he was responsible for knowing and following the applicable policies, procedures, general orders and bureau directives. He was also aware that failure to do so could "impact the weight to be afforded forensic analysis in court and, in some instances, the very admissibility of that evidence and any forensic analysis performed on such evidence." Indictment ¶ 10. Knowing the requirements of his job and the importance of following protocol, Kofoed submitted the filter paper from his April 27, 2006 search of the Ford

Contour to the University of Nebraska Medical Center Laboratory for DNA analysis indicating he had conducted the search on May 8, 2006.

At the time Kofoed caused the filter paper to be submitted to the UNMC laboratory for analysis, he knew the submission would result in a DNA analysis report which would be sent by the laboratory, through the United States Postal Service, to the Cass County Attorney and to the CSI Division. Kofoed did not tell anyone at the Cass County Sheriff's Office, the Nebraska State Patrol, or the Cass County Attorney that the envelopes containing the filter paper, and his reports detailing the collection of the blood evidence, contained the wrong date of collection until the criminal cases against Matthew Livers and Nicholas Sampson were dismissed and Livers and Sampson were released from detention. Nor did Kofoed tell the case agents, investigators, or the Cass County Attorney where the filter paper had been stored between its collection on April 27, 2006, and May 8, 2006–the date he falsely completed his reports and packaged the evidence.

It was material that Kofoed failed to disclose to law enforcement that he had collected the filter paper evidence on April 27, 2006, and that the evidence was left unprotected and unreported until Kofoed completed the paperwork on May 8, 2006. Kofoed knew the DNA evidence derived from filter paper was the only physical evidence linking Livers and Sampson to the murders of Wayne and Sharmon Stock and that it had a faulty chain of custody. The Cass County Attorney relied on the accuracy of Kofoed's reports and the DNA analysis in charging Livers and Sampson for first degree murder. The Cass County Attorney

relied on the blood evidence in arguing for Nicholas Sampson's continued detention. Thus, Kofoed's actions caused Livers and Sampson to be charged and detained.

Kofoed had a duty to provide honest services to Cass County Sheriff's Office, the Nebraska State Patrol, the case agents, and the Cass County Attorney. The Memorandum of Understanding between the Douglas County Sheriff's Office and Cass County Sheriff's Office, pursuant to which Kofoed and all other Douglas County CSI employees worked, anticipates that all will provide honest services. Defendant, by his actions and failure to act deprived his agency and those agencies with which his agency contracted, of his honest services.

## RECOMMENDATION

**IT IS RECOMMENDED** that defendant's Motion to Declare 18 U.S.C. §§ 1341 and 1346 unconstitutional (Doc. 15) be denied.

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing a "Statement of Objection to Magistrate Judge's Recommendation" on or before **Monday, July 20, 2009.**

**DATED July 15, 2009.**

BY THE COURT:

s/ F.A. Gossett
**United States Magistrate Judge**